UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

Eastern District of Kentucky
FILED
JAN 0 5 2007
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-03-GWU

JEFFREY POLSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of the unfavorable portion of administrative decision on his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Polson

>   Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Polson

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Polson

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Polson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jeffrey Polson, was found by an administrative law judge (ALJ) to have "severe" impairments consisting of a history of probable acute Lyme Disease, an affective disorder, and anxiety. (Tr. 22). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that, although Mr. Polson was disabled from his alleged onset date of March 10, 1998 through July 31, 2001 and entitled to a closed period of disability associated with that time frame, there was a significant number of jobs existing in the national economy which he could perform beginning August 1, 2001. (Tr. 24-9). Therefore, he was not entitled to benefits from that date through the date of the decision, December 19, 2003. The Appeals Council declined to review, and plaintiff's appeal of the unfavorable portion of the administrative decision followed.

At the administrative hearing, the ALJ had asked the VE whether a person of Mr. Polson's age, education, and work experience could perform any jobs if he were capable of "light" level exertion, with standing and walking no more than two hours in an eight-hour day, and sitting six hours in an eight-hour day, and the option of

Polson

sitting or standing at will, and also had the following nonexertional impairments. (Tr. 522-3). He: (1) could perform no more than frequent bending; (2) could occasionally climb, stoop, and crawl; (3) could have no exposure to excessive noise or excessive cold; and (4) would be "moderately limited" in his ability to complete a normal work day and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. (Tr. 209-11, 522-3). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 523).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff, noting that he had been found to be under a disability between 1998 and 2001, cites both physical and mental factors in opposition to the ALJ's determination that his condition had improved to the point that it was no longer disabling after July 31, 2001. The Court finds only the plaintiff's arguments regarding the mental factors persuasive.[1]

---

[1] For reasons given in the Commissioner's brief, particularly regarding the lack of treatment for chronic physical complaints following August 2001, the Court finds the plaintiff's arguments regarding his physical impairments to be unpersuasive. Commissioner's Motion for Summary Judgment, Docket Entry No. 22, pp. 12-18.

8

Mr. Polson, who testified that he was nervous and hardly able to leave his house (Tr. 500, 512, 514) was examined in October, 1998 by Dr. Kevin Eggerman, a psychiatrist. He described chronic anxiety which had been exacerbated since contracting Lyme Disease in April, 1998. (Tr. 185). Dr. Eggerman found the plaintiff to be cooperative, but anxious and defensive and with a relative lack of a "positive affect." (Tr. 188). He diagnosed an adjustment disorder and "rule out" generalized anxiety disorder, with a current Global Assessment of Functioning (GAF) score of 55-60, with the highest GAF score in the past year of 75. (Tr. 189). A GAF score of 55-60 reflects "moderate symptoms", while a score of 75 reflects only transient or slight symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Eggerman opined that Mr. Polson would have a "fair" ability to understand and remember complex instructions, persist on tasks, and tolerate work-related stress in a routine eight-hour day, but did not define the term "fair." (Tr. 190). A state agency psychologist, Dr. Virginia J. Moody, who reviewed the record in November 1998, concluded that the plaintiff would have restrictions consistent with the hypothetical question, explicitly basing her opinion on Dr. Eggerman as the one psychiatric examining source. (Tr. 209-12).

Subsequently, records were submitted from Pierce D. Nelson, M.D., who provided mental health treatment to Mr. Polson on several occasions in 1998 and 1999. Although the plaintiff's first visit to Dr. Nelson was on August 31, 1998, at which time Dr. Nelson diagnosed major depression along with anxiety-related

9

problems (Tr. 256-7), this information was not available to the state agency psychologist at the time she completed her opinion in November of the same year. Dr. Nelson saw the plaintiff again four months later (Tr. 256), and on April 10, 1999 prepared a mental residual functional capacity form indicating that Mr. Polson had "poor or no" ability to function independently, understand, remember, or carry out detailed or complex job instructions, or demonstrate reliability, and had a "seriously limited but not precluded" ability in all other areas of occupational, performance, and personal/social adjustment. (Tr. 219-20). In July, 1999, Dr. Nelson indicated in a letter to the plaintiff's attorney that Mr. Polson's current medications were Zoloft, Depakote, and Xanax, although there had been some difficulty in regulating them. (Tr. 251). The plaintiff stated at the administrative hearing that he had stopped receiving psychiatric treatment for a time because he could not handle the side effects of all medications he was given. (Tr. 501). He also testified that he began feeling better sometime in 2001 and bought a tow truck to attempt to go back to work, although he was too nervous to be called out at night and was no longer using the truck. (Tr. 493-4, 502-3). He had also worked about two months at a coal preparation plant in the summer of 2003, before being laid off for unknown reasons. (Tr. 490-3).

The most recent mental health records indicate that Mr. Polson saw a psychiatric source in October, 2003 and was given diagnoses of "rule out" bipolar disorder, "rule out" major depression, dysthymia, and "rule out" panic disorder with

agoraphobia, and was assigned a GAF of "50/55," but no indication of functional restrictions apart from the GAF score is contained in the office note, or in a single follow-up note. (Tr. 479, 481-2). Apparently no state agency sources reviewed this evidence, either.

In adopting Dr. Moody's 1998 restrictions to the period from August 1, 2001 through the date of his decision on December 19, 2003, the ALJ stated that the plaintiff's most recent mental health treatment notes in 2003 reflected a GAF of 55, "which is in the range of functioning also found that the time of Dr. Eggerman's examination." (Tr. 25). Therefore, the ALJ stated that it appeared that Mr. Polson continued to function in the "moderately limited range," and accepted the limitations given by Dr. Moody in 1998 as applying to the 2001-2003 time frame. (Id.).

Whatever else may be said about the equivalence of the GAF scores, the plaintiff correctly points out that the ALJ omitted any mention of Dr. Nelson's treatment of the plaintiff in the same time frame as Dr. Eggerman's examination, and, by the same token, did not discuss Dr. Nelson's opinion that the plaintiff had little or no ability to make any occupational, performance, or personal/social adjustments. Nor did Dr. Moody, the state agency reviewer whose opinion the ALJ directly credited, have the opportunity to review Dr. Nelson's notes. Thus, the implication that the plaintiff's psychological condition was essentially the same between 1998 and 2003 was, at a minimum, not fully evaluated. The plaintiff correctly notes that the case of <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d

11

Polson

541 (6th Cir. 2004) requires the Commissioner to follow his own procedural regulations, particularly in cases involving the rejection of a treating physician opinion. Id. at 544. Moreover, the GAF score of 50 in 2003, the lower score in the range of "50/55," (Tr. 482), would equate to "serious impairment" per the DSM-IV-TR, which could also be seen as consistent with the opinion of the previous treating source, Dr. Nelson.

The decision will be remanded for further consideration.

This the ___5___ day of January, 2007.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE